IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| TINA M. SLOAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 04-5091-CV-SW-ODS |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her application for disability and supplemental security income benefits . The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff was born in December 1970 and has completed the eleventh grade. She has prior work experience as a loan officer, human resources clerk, cashier, sales clerk and stock clerk. She last worked on December 3, 2001.

Tragically, several members of Plaintiff's family passed away within a short time of each other in 2001, and Plaintiff had difficulties coping with these losses. In December 2001 she began experiencing night sweats, fatigue and migraines. She told her family doctor (Dr. William Kelly) she had a lack of energy and was experiencing anhedonia.[1] Plaintiff was taking Celexa for depression and Trazadone to help her sleep, and was receiving counseling from Dr. Kelly on an outpatient basis. In May 2002 she

---

[1] Anhedonia refers to the absence of, or the inability to experience, pleasure.

reported experiencing mood swings and suicidal thoughts, and in August 2002 Dr. Kelly added Klonopin to her regimen to help treat the depression.

In January 2003, Plaintiff's depression worsened and she attempted suicide. She was admitted to a psychiatric unit, was treated with medicine and therapy, and released after three days. Shortly thereafter, she told Dr. Kelly she was doing better. R. at 178. However, in June 2003 Plaintiff told Dr. Kelly she had decided on her own to stop taking her medication, and her depression returned. Dr. Kelly warned her about the consequences of this decision, "[e]ncouraged her not to do this," and reissued prescriptions for her medication. R. at 174. He also advised Plaintiff to seek counseling.

In November 2003, Plaintiff began seeing a psychologist, Dr. Ferd Wise. The record contains progress notes from their first three meetings, the last of which was in mid-January, 2004. The notes reflect Plaintiff's depression and difficulty coping with the death of her family members and her situation in life as well as occasional suicidal thoughts. Following the third meeting, Dr. Wise completed a Medical Source Statement-Mental. R. at 195-96. He indicated Plaintiff is, *inter alia*, moderately limited in her ability to follow instructions or maintain attention and concentration for an extended period of time, work with others, complete a normal workday or workweek without interruption, or respond appropriately to changes in the work setting. He also indicated Plaintiff is markedly limited in her ability to interact with the public, accept instructions and criticism from supervisors, get along with co-workers, or set realistic goals.

Dr. Wise provided a narrative illumination of the Medical Source Statement in a letter dated March 30, 2004. R. at 279. By that time, Dr. Wise had seen Plaintiff a total of ten times. He related that Plaintiff's difficulty dealing with her grief "has made it difficult for her to concentrate, and to relate effectively with others. It has also left her with a profound sense of hopelessness, to the point that she has thoughts of suicide. She says the only reasons she would not act on those thoughts are her strong religious beliefs." Dr. Wise continued by indicating that his "responses to the questions [on the Medical Source Statement] reflect my opinion that she cannot, at least at this time, carry out complex tasks that involve several stage instructions and/or that require her to

2

interact diplomatically with others. I think she can handle simple tasks, and work in an almost solitary environment."

At the hearing, Plaintiff described herself as depressed and subject to unpredictable mood swings. She keeps to herself and minimizes interaction with people other than her father, children, and a friend. For instance, she does her grocery shopping at night in order to avoid the crowds. Plaintiff did not describe herself as suffering from any physical limitations.

The ALJ posed hypothetical questions to a Vocational Expert ("VE"). He asked the VE to assume a person of Plaintiff's age, education and work history

> who should avoid high stress such as fast paced activity, explicit production quotas, deadlines, schedules or changing work setting, who would be unable to sustain a high level of concentration, could not sustain precision or work involving sustained attention to detail, but who could pay attention well enough to sustain a simple routine or a repetitive task, and who should avoid any frequent or prolonged personal interaction with the public or coworkers.

R. at 325. In response to the ALJ's question, the VE testified such a person could return to their past relevant work as a stock clerk. In particular, the VE noted the nature of the work is repetitive for short durations, minimal supervisory contact, does not require working with the public and involves job functions that are performed alone. R. at 325-26; 328. The VE also identified other jobs the hypothetical person described by the ALJ could perform.

The ALJ ultimately concluded Plaintiff did not meet any of the listed impairments. After identifying some ambiguity in the Medical Source Statement's phrase "moderately limited," the ALJ relied on Dr. Wise's letter to find Plaintiff was "capable of social interaction occasionally and for short periods." R. at 25. This finding was also augmented by Plaintiff's activities, which included activities consistent with minimal, but not a total absence of, social contact. The ALJ also found, based on the VE's testimony, Plaintiff could perform her past relevant work as a stock clerk (but not any of her other past relevant work) as well as other jobs that exist in the national economy.

3

## II.  DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole.  Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion.  [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion."  Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted).  Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision.  Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)).  Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

Plaintiff does not clearly indicate whether her arguments address the ALJ's findings at step three, step four, or step five of the analysis.  This may be due to the fact that her primary argument may be related to all three of those steps.  Specifically, Plaintiff focuses on what she perceives to be the ALJ's failure to give proper deference to Dr. Wise's opinion.

Generally speaking, a treating physician's opinion is entitled to deference, and a treating specialist's opinion is entitled to greater weight than a general practitioner's opinion.  This general rule is not ironclad; a treating physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record.  E.g., Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996).

The issue in this case is unusual because there is little doubt that Dr. Wise was Plaintiff's treating physician (albeit for a short period of time when the hearing was held).  The ALJ's initial difficulty was ascertaining the content of Dr. Wise's opinion.  Plaintiff

4

faults the ALJ's semantic analysis of the phrase "moderately limited," and to some extent the Court shares Plaintiff's concerns. The phrase appears on a form prepared by the Commissioner and the phrase is defined by the Commissioner; it seems inconsistent for the Commissioner to then rely on the phrase's ambiguity as a reason to deny benefits. Were this the end of the ALJ's analysis, the Court might feel compelled to remand the case for reconsideration. However, it was not the end of the ALJ's analysis; the ALJ's decision was informed by Dr. Wise's March 2004 letter, which set forth his opinion in narrative terms. Dr. Wise specifically stated he believed Plaintiff could "handle simple tasks, and work in an almost solitary work environment." R. at 279. Whether such jobs exist is, of course, beyond Dr. Wise's expertise. Nonetheless, the letter is significant because the ALJ's findings are consistent with Dr. Wise's opinion as set forth in the letter, so Plaintiff's contention the ALJ improperly rejected Dr. Wise's views must be rejected.

The Court also notes there is substantial evidence in the record as whole to support the ALJ's conclusions. Plaintiff's medication was effective, but she decided to stop taking it in June 2003. Plaintiff's daily activities demonstrate a certain degree of social avoidance, but not a complete and total avoidance; she is able to interact with others for short periods of time. Plaintiff does not suffer from any physical limitations. Dr. Wise's opinion also supports the ALJ's decision.

Most of Plaintiff's arguments stem from the alleged failure to accord Dr. Wise's opinion proper deference. The only issue not implicated by this argument is Plaintiff's contention that the ALJ failed to properly consider the physical and mental demands of Plaintiff's past work as a stock clerk. The Court disagrees; the ALJ fulfilled his obligation by posing questions to the VE, who testified a hypothetical individual in Plaintiff's circumstances could perform work as a stock clerk. Even if there was something unique about the manner in which Plaintiff performed her work as a stock clerk, the VE's testimony demonstrates, at a minimum, Plaintiff can perform that job as it typically exists. Moreover, the ALJ also found Plaintiff could perform other work.

5

## III.  CONCLUSION

For these reasons, the Court affirms the Commissioner's final decision denying Plaintiff's application for benefits.

IT IS SO ORDERED.

                                               /s/ Ortrie D. Smith
                                               ORTRIE D. SMITH, JUDGE
DATE: April 20, 2005                    UNITED STATES DISTRICT COURT